## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

**Paul Goldfinch**
    Apt. 10-04, Amber Building
    Tiara Residence
    P.O. Box 35 665
    Palm Jumeirah
    Dubai, UAE

            *Plaintiff,*

    v.

**ANTONY J. BLINKEN**
**in his official capacity as**
    **Secretary of the United States**
    **Department of State**
    2201 C St., NW
    Washington, D.C. 20037

    and

**THE UNITED STATES DEPARTMENT**
**OF STATE**
    2201 C Street, NW
    Washington, D.C. 20037

    and

**JIM MULLINAX,**
**in his official capacity as**
    Director of the
    United States Department of State
    Bureau of Economic and Business Affairs
    Office of Sanctions Policy
    & Implementation
    2201 C St., NW
    Suite #4657
    Washington, D.C. 20037

    and

**THE UNITED STATES DEPARTMENT**

CIV. NO.

**COMPLAINT**

**ECF**

**OF STATE, OFFICE OF**                                      )
**SANCTIONS POLICY**                                         )
**AND IMPLEMENTATION**                                       )
    2201 C Street, NW                     )
    Suite #4657                           )
    Washington, D.C. 20037                )

**JANET YELLEN**                                             )
**in her official capacity as**                             )
    **Secretary of the United States**    )
    **Department of the Treasury**         )
    1500 Pennsylvania Ave., NW            )
    Washington, D.C. 20220                )
                                                         )
    and                                   )
                                                         )
**THE UNITED STATES DEPARTMENT OF**                          )
**THE TREASURY**                                             )
    1500 Pennsylvania Ave., NW            )
    Washington, D.C. 20220                )
                                                         )
    and                                   )
                                                         )
**ANDREA M. GACKI**                                          )
**in her official capacity as**                             )
    **Director of the**                    )
    **United States Department of the Treasury**  )
    **Office of Foreign Assets Control**   )
    1500 Pennsylvania Avenue, NW          )
    Freedman's Bank Building              )
    Washington, D.C. 20220                )
                                                         )
    and                                   )
                                                         )
**THE UNITED STATES DEPARTMENT**                             )
**OF THE TREASURY, OFFICE OF FOREIGN**                       )
**ASSETS CONTROL**                                           )
    1500 Pennsylvania Avenue, NW          )
    Freedman's Bank Building              )
    Washington, D.C. 20220                )
                                                         )
                                                         )
         *Defendants.*  )
_____             )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Paul Goldfinch brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of State, its Secretary Anthony J. Blinken, the United States Department of State's Office of Sanctions Policy and Implementation and its Director Jim Mullinax, along with the United States Department of the Treasury, its Secretary Janet Yellen, the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Director Andrea M. Gacki, and in support of his complaint alleges:

### INTRODUCTION

1.      In direct response to Defendant OFAC's designation of Bank Otkritie—a financial institution based in the Russian Federation—on February 22, 2022, Plaintiff Paul Goldfinch resigned from his position as board member at Bank Otkritie and terminated his relationship, financial and otherwise, with the bank. In doing so, Plaintiff acted consistent with U.S. sanctions compliance expectations and U.S. sanctions policy objectives, assessing his exposure to U.S. sanctions and mitigating that exposure by ending his relationship with the sanctions target.

2.      Plaintiff nevertheless found himself subject to U.S. sanctions nearly two weeks following his resignation from Bank Otkritie's board of directors. The factual basis provided in Defendants' sole public statement on the sanctions action: Plaintiff's role as a board member at Bank Otkritie. It is clear that Defendants' fact-finding procedures failed to discover that Plaintiff was no longer a board member at Bank Otkritie, and this failure resulted in the wrongful imposition of sanctions on Plaintiff.

3.      Despite obvious frustration with Defendants' failure to appreciate that Plaintiff had resigned from his position as board member at Bank Otkritie and their erroneous decision to impose sanctions on him, Plaintiff sought to engage Defendants in good-faith, utilizing the

administrative procedures for sanctioned persons seeking delisting and submitting arguments and supporting evidence as to why Defendants' decision to designate Plaintiff was made in error or, alternatively, why there had been a change in circumstances negating the basis for the designation. Considering the straightforward nature of the facts and the arguments in favor of delisting, as well as recent precedent established by Defendant OFAC in a similar case, Plaintiff expected that Defendants would expeditiously act to remove the sanctions imposed against him.

4.      For more than a year, Plaintiff has acted in accord with these delisting procedures to seek the rescission of his designation under Executive Order ("E.O.") 14024 and the removal of his name from OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List"). Despite the fact that the factual predicate for Plaintiff's designation was in clear error and despite Defendants' own apparent acknowledgement that Plaintiff no longer serves as a board member at Bank Otkritie, Plaintiff has pursued his sanctions delisting to no avail yet. Instead of acting in accordance with law and the delisting procedures under which Defendants operate, Defendants have resorted to a series of dilatory tactics aimed entirely at deferring the inevitable conclusion that Plaintiff does not meet the criteria for designation under E.O. 14024 and that Plaintiff merits immediate removal from the SDN List.

5.      To postpone a final adjudication of Plaintiff's delisting petition, Defendants have resorted to issuing a series of questionnaires to Plaintiff that seeks information without any relevance to his delisting matter and the reasons for his designation under E.O. 14024. This includes, most egregiously, questions relating to members of Plaintiff's family, including his wife and children (none of which are subject to sanctions in any manner and are not engaged in, or suspected of engagement in, sanctionable activities); accusatory questions regarding Plaintiff's decision a decade earlier to seek employment at a major global financial institution headquartered

in the Russian Federation (when doing so was not sanctionable under U.S. law); and open-ended fishing expeditions regarding whether Plaintiff receives, or expects to receive, income from any Russia-related entities (regardless of whether doing so is sanctionable or not under U.S. law). None of these questions are consistent with the relevant administrative delisting procedures, and none are aimed at determining whether Plaintiff continues to serve as a board member at Bank Otkritie. Indeed, despite their public claims to using economic sanctions solely to change the behavior of sanctioned parties and not to punish sanction targets, Defendants are wholly reluctant to remove sanctions on Plaintiff regardless of the merits of doing so.

6.      Just as egregiously, Defendants the State Department and its Office of Sanctions Policy and Implementation have engaged in this bad-faith conduct without apparent legal authority, as OFAC's delisting procedures specify that Defendant OFAC is the agency tasked with reviewing delisting matters involving sanctioned individuals and E.O. 14024—the authority under which Plaintiff was sanctioned—limits the Secretary of the Treasury to redelegate her authorities thereunder solely to agencies or offices within the Treasury Department, not to other departments of the federal government or their agencies and offices. Indeed, this could explain some of the more egregious actions undertaken by Defendants, as neither the State Department nor its Office of Sanctions Policy and Implementation has experience handling administrative delisting matters involving sanctioned persons and is not accustomed to the procedures entailed with such matters.

7.      Moreover, other individuals who were sanctioned for being board members of Bank Otkritie simultaneous with Plaintiff's own designation have seen their designations rescinded and their names removed from the SDN List. Despite the legal mandate that Defendants treat similarly-situated parties in a like manner so as to avoid engaging in arbitrary and capricious agency action,

Defendants have made no effort to accord Plaintiff the same treatment as has been provided to other former board members of Bank Otkritie.

8.      For Plaintiff, the consequences of his sanctions designation have been personally ruinous, causing substantial financial hardship and reputational damage and limiting his ability to provide support for his immediate family. Unlike other targets of U.S. sanctions, Plaintiff is not an "oligarch" or an ultra-high net-worth individual with the resources to sustain his livelihood in the face of bruising U.S. sanctions. Instead, Plaintiff is a banking professional sought-after by Bank Otkritie to utilize his experience in Europe's banking sector to facilitate the bank's privatization via an Initial Public Offering ("IPO").[1] Following Russia's war in Ukraine and the designation of Bank Otkritie by Defendant OFAC, Plaintiff immediately sought to terminate his relationship with the bank and resigned from his position as board member.

9.      As a result of his designation, Plaintiff has been unable to access his bank accounts and other financial accounts, limiting his ability to make necessary payments to maintain his and his family's livelihood, including on outstanding loans and third-party invoices. Soon after his designation, Plaintiff tendered his resignation from his role as Chief Financial Officer ("CFO") at Pyppl, a company based in the United Arab Emirates at which he was primarily employed while serving as a non-executive board member at Bank Otkritie, in order to limit Pyppl's exposure to U.S. sanctions arising from his designation. The reputational damage entailed with his designation has meant that Plaintiff remains effectively unemployable in any senior role with regulatory or statutory responsibilities so long as he is subject to U.S. sanctions. The effect of the sanctions has

---

[1] Privatization would appear to have been consistent with U.S. sanctions policy objectives, entailing the Russian state's loss of ownership and control over the bank.

been entirely catastrophic for Plaintiff, both personally and financially, and remains without end so long as Defendants persist in their unlawful actions.

10.     For these reasons, Plaintiff seeks this Court's intervention to right this wrong; ensure that Defendants act with lawful authority when adjudicating Plaintiff's delisting petition; and issue an immediate decision on Plaintiff's delisting matter, a decision that acknowledges that Plaintiff has met his burden under OFAC's delisting procedures and merits the rescission of his designation under E.O. 14024 and the removal of his name from the SDN List.

## JURISDICTION AND VENUE

11.     This action arises under the United States Constitution, the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq*., and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

12.     This Court may grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief pursuant to Fed. R. Civ. P. Rule 65.

13.      Venue is proper in the District of Columbia as this is the district in which the events giving rise to the complaint occurred and in which Defendants reside. 28 U.S.C. §§ 1391(b), (e).

## THE PARTIES

14.     Plaintiff is and was at all relevant times a citizen of New Zealand. He currently resides in the United Arab Emirates and the Russian Federation.

15.     Plaintiff has been employed in the financial services industry in Europe, the Middle East, and the Russian Federation for the past two decades. The vast majority of this time was spent in senior roles with UBS AG—the largest Swiss-headquartered financial institution. Most recently,

Plaintiff served as the Chief Financial Officer at Pyppl Limited, an entity headquartered in the United Arab Emirates that has developed a smartphone app-based financial product aimed at serving the underbanked in the Middle East and Africa. Prior to his position at Pyppl in 2020, Plaintiff was the Group Chief Financial Officer at AS 4finance, an entity headquartered in Latvia that served as Europe's leading digital consumer finance group. Plaintiff's last Russia-based executive employment was at Sberbank, where he served as Chief Financial Officer of the Corporate and Investment Banking Division. Plaintiff has not held any executive employment in Russia since September 2016.

16.     On April 20, 2022, Plaintiff was designated by Defendant the United States Department of State pursuant to E.O. 14024, and his name was included on the List of Specially Designated Nationals and Blocked Persons administered by Defendant OFAC.

17.     Defendant the United States Department of State is a department of the United States federal government that manages the United States' relationships with foreign states, international organizations, and the people of other countries. The State Department is responsible for designating Plaintiff pursuant to E.O. 14024. The State Department is located at 2201 C Street, NW, Washington, D.C. 20037.

18.     Defendant Antony J. Blinken is the Secretary of the United States Department of State. Mr. Blinken is sued in his official capacity.

19.     Defendant the Office of Sanctions Policy and Implementation of the United States Department of State's Bureau of Economic and Business Affairs is a federal agency that is part of the United States Department of State. The Office of Sanctions Policy and Implementation is adjudicating Plaintiff's petition for delisting under E.O. 14024 and for removal from the SDN List.

The Office of Sanctions Policy and Implementation is located at 2201 C Street, NW, Suite # 4657, Washington, D.C. 20037.

20.     Defendant Jim Mullinax is the Director of the Office of Sanctions Policy and Implementation at the United States Department of State's Bureau of Economic and Business Affairs. Mr. Mullinax is sued in his official capacity.

21.     Defendant the United States Department of the Treasury is a department of the United States federal government that is responsible for maintaining the financial and economic security of the United States. The Department of the Treasury is also responsible for overseeing various offices, including OFAC. The Department of the Treasury is located at 1500 Pennsylvania Ave., NW, Washington, D.C. 20220.

22.     Defendant Janet Yellen is the Secretary of the United States Department of the Treasury. Ms. Yellen is sued in her official capacity.

23.     OFAC is a federal administrative agency of the United States Department of the Treasury that is responsible for administering U.S. economic sanctions programs, including, *inter alia*, by designating persons pursuant to E.O. 14024; regulating dealings with them under that authority via 31 C.F.R. Parts 501 and 587, the "Reporting, Procedures, and Penalties Regulations," and the "Russian Harmful Foreign Activities Sanctions Regulations," respectively; and adjudicating petitions for delisting under E.O. 14024 and removal from the SDN List pursuant to 31 C.F.R. §§ 501.807 and 587.101. OFAC is responsible for including and maintaining Plaintiff's name on the SDN List. OFAC is located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington, D.C. 20220.

24.     Defendant Andrea M. Gacki is the Director of OFAC. Ms. Gacki is sued in her official capacity.

## FACTUAL ALLEGATIONS

*A.    Plaintiff's Designation Pursuant to E.O. 14024*

25.    On April 20, 2022, Plaintiff was designated by the State Department pursuant to E.O. 14024 for being or having been a leader, official, senior executive officer, or member of the board of directors, or member of an entity whose property and interests in property are blocked pursuant to E.O. 14024. 87 FED. REG. 31923. In the press statement announcing Plaintiff's designation, the State Department stated that it had designated Plaintiff for being a member of the Board of Directors of Bank Otkritie—a financial institution designated pursuant to E.O. 14024. Press Statement, U.S. Dep't of State, Promoting Accountability for Human Rights Abuses in Russia and Belarus and Taking Action Against Sanctions Evaders (April 20, 2022), https://www.state.gov/promoting-accountability-for-human-rights-abuses-in-russia-and-belarus-and-taking-action-against-sanctions-evaders/ (last accessed June 27, 2023).

26.    At the time of his designation by the State Department, Plaintiff was no longer a member of the board of directors of Bank Otkritie, as Plaintiff had resigned from his position as a director of Bank Otkritie's board effective April 8, 2022. It does not appear that Defendants were aware of Plaintiff's resignation from his position as director on Bank Otkritie's board at the time of the sanctions action on April 20, 2022.

*B.    Plaintiff's Request for Delisting*

27.    On May 5, 2022, Plaintiff submitted a request for delisting to Defendants OFAC and its Director, Andrea M. Gacki, seeking the rescission of his designation under E.O. 14024 and the removal of his name from the SDN List. Exhibit A—May 5, 2022 Delisting Petition. This delisting request was made pursuant to OFAC's delisting procedures set forth at 31 C.F.R. §

501.807. These OFAC delisting procedures are applicable to parties seeking the rescission of their designation under E.O. 14024 by virtue of 31 C.F.R. § 587.101.

28.     In his delisting petition, Plaintiff made two arguments. First, Plaintiff argued that the State Department erred in designating Plaintiff, as the State Department was not aware that Plaintiff had resigned from his position as a member of Bank Otkritie's board of directors effective April 8, 2022. Plaintiff included as evidentiary support his letter to Bank Otkritie announcing his resignation from the board of directors, as well as responsive letters from Bank Otkritie acknowledging the resignation. Exhibit A—May 5, 2022 Delisting Petition.

29.     Second, Plaintiff argued that there had been a change in circumstances negating the basis for his designation, as he had resigned from his position as a member of Bank Otkritie's board of directors and the factual predicate for his designation under E.O. 14024 was that he was a member of Bank Otkritie's board. Plaintiff included documentation evidencing this change in circumstances—i.e., his resignation from the board of directors effective April 8, 2022. Plaintiff noted that his resignation from Bank Otkritie's board of directors—which took place almost two weeks prior to his designation by the State Department—was fully consistent with U.S. sanctions policy objectives, which—as evident from Defendant OFAC's public guidance—are intended to change the behavior of the target, not to punish the target. *See* U.S. Dep't of Treasury, Office of Foreign Assets Control, Filing a Petition for Removal from an OFAC List, https://ofac.treasury.gov/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list (last accessed June 27, 2023) (stating that "[t]he ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior.").

30.     Plaintiff's delisting petition also included proposed remedial measures that—if accepted by Defendant OFAC and adopted by Plaintiff—would further negate the basis for his

designation under E.O. 14024 and warrant the rescission of his designation and the removal of his name from the SDN List. Exhibit A—May 5, 2022 Delisting Petition. Pursuant to OFAC's delisting procedures set forth at 31 C.F.R. § 501.807, sanctioned persons seeking delisting may propose remedial measures for OFAC's consideration.

31.     On May 6, 2023, Defendant OFAC acknowledged receipt of Plaintiff's delisting request and assigned the matter a Case No. RUSSIA-EO14024-26735. Exhibit B—OFAC Email Acknowledgement. However, OFAC's email acknowledgement stated that—because Plaintiff's designation was purportedly made under a State Department authority—the State Department's Office of Sanctions Policy and Implementation would serve as the point of contact in adjudicating Plaintiff's delisting petition. Defendant OFAC also referred Plaintiff to its delisting procedures set forth at 31 C.F.R. § 501.807 for information concerning the procedures for removal.

32.     Defendant OFAC's email acknowledgement did not provide the legal basis, if any, for delegating to the State Department the authority to adjudicate delisting petitions, nor did the email acknowledgement state how the State Department could lawfully adjudicate sanctions delisting matters pursuant to a regulation promulgated and administered by OFAC.

C.     *Plaintiff's Request for Expedited Adjudication*

33.     In his delisting petition and follow-up correspondence with the State Department, Plaintiff requested that Defendants adjudicate Plaintiff's delisting matter within 35 days from the date of submission, as Defendant OFAC had taken similar expedited action with respect to the designation of Ozon Bank under E.O. 14024. Exhibit A—May 5, 2022 Delisting Petition; Exhibit C—Email Correspondence with State Department.

34.     Defendants have thus far ignored this request for expedited consideration, as well as the requirement to treat similarly-situated parties in like manner, as Plaintiff's delisting matter remains outstanding more than twelve months since Plaintiff filed the initial submission.

      *D.*    *State Department's Questionnaires to Plaintiff*

35.     Despite having all the information necessary to adjudicate Plaintiff's delisting petition, Defendants have engaged in dilatory tactics aimed at forestalling a decision on Plaintiff's delisting matter. This has primarily involved the issuance of successive questionnaires to Plaintiff, which set forth questions that neither seek clarifying or corroborating information regarding the factual claims and arguments made by Plaintiff in his delisting petition nor have relevance to the central question of whether Plaintiff has carried his burden under OFAC's delisting procedures.

36.     OFAC's delisting procedures authorize sanctioned persons to seek administrative reconsideration of their designation or assert that the circumstances resulting in the designation are no longer applicable and seek to have their designation rescinded. 31 C.F.R. § 501.807. These delisting procedures state that petitioners may submit arguments or evidence that the person believes establishes that an insufficient basis exists for the designation and may also propose remedial steps on the person's part, such as resignation of persons from positions in a blocked entity, which the person believes would negate the basis for designation. OFAC's delisting procedures further provide that the information submitted by a sanctioned person is to be reviewed by OFAC, which may request clarifying, corroborating, or other additional information relevant to its consideration of the delisting request. 31 C.F.R. § 501.807(b).

37.     On June 15, 2022, Defendants the State Department and its Office of Sanctions Policy and Implementation sent a questionnaire to Plaintiff seeking information and supporting documentation regarding Plaintiff's resignation from Bank Otkritie's board of directors and

whether he maintained any ongoing relationship, financial or otherwise, with the bank. Exhibit D—June 15, 2022 Questionnaire. Plaintiff provided responses to this questionnaire on June 22, 2022. Exhibit E—Response to June 15, 2022 Questionnaire. Plaintiff's response made abundantly clear that Plaintiff had resigned from his position as director on Bank Otkritie's board effective April 8, 2022, and that Plaintiff no longer had any relationship, financial or otherwise, with Bank Otkritie. Plaintiff's response also requested that Defendants the State Department and its Office of Sanctions Policy and Implementation refer to third-party due diligence platforms, such as Dow Jones Risk Center, to receive further confirmation regarding Plaintiff's resignation from Bank Otkritie's board of directors. Plaintiff's response included as an attachment the entry for Bank Otkritie on Dow Jones Risk Center, which identified Plaintiff as having resigned from his position as of April 8, 2022.

38.     Despite having more than sufficient information to adjudicate Plaintiff's delisting petition and to confirm the representations made by Plaintiff in his delisting request, Defendants the State Department and the Office of Sanctions Policy and Implementation submitted a second questionnaire to Plaintiff on October 21, 2022—four months following Plaintiff's response to the initial questionnaire. Exhibit F—October 21, 2022 Questionnaire.

39.     In its second questionnaire, Defendants—despite claiming that the questionnaire was intended to "further evaluate the petition and responses to the initial questionnaire"—resorted to posing questions without any relevance to their consideration of Plaintiff's delisting petition and whether Plaintiff merits continued designation under E.O. 14024. The second questionnaire included questions regarding Plaintiff's wife and adult children, including their places of current employment; his relationship with a former colleague on Bank Otkritie's board of directors; whether he has received, or expects to receive, any income from Russia-related entities since the

time of his resignation from Bank Otkritie's board of directors; his personal notes regarding the most recent meetings of Bank Otkritie's Audit Committee and Supervisory Board; and his rationale for assuming positions at Sberbank in September 2014 and Bank Otkritie in 2020 (despite the fact that dealings with the banks were not sanctionable under U.S. law at that time). None of these questions had any relevance whatsoever to whether—as Defendants effectively conceded in the course of the questionnaire—Plaintiff had resigned from his position on Bank Otkritie's board of directors prior to his designation under E.O. 14024, and none of these questions were consistent with the procedures set forth by OFAC at 31 C.F.R. § 501.807 and under which Defendants were operating in adjudicating Plaintiff's delisting matter.

40.     Despite Defendants' apparent bad-faith questionnaire, Plaintiff—still subject to U.S. sanctions that were having a catastrophic effect on his personal life—responded in good-faith and transparently on January 16, 2023. Exhibit G—Response to October 21, 2022 Questionnaire. Plaintiff provided fulsome responses to all of Defendants' questions, all the while registering his objections to those questions deemed to be outside the scope of the delisting matter. Plaintiff's questionnaire response further reiterated that Defendants' failure to act on his delisting petition could have irreparable consequences to Plaintiff and his family, underscoring the pressing need for Defendants to act expeditiously on the delisting petition. Plaintiff's response noted that Defendants had not responded to, or otherwise engaged with, the remedial measures that had been proposed in the initial delisting petition.

41.     Despite again having more than sufficient information to adjudicate a decision on Plaintiff's delisting matter and remove Plaintiff from the U.S. sanctions list, Defendants the State Department and the Office of Sanctions Policy and Implementation submitted a third questionnaire to Plaintiff on May 19, 2023—the same day on which Defendants rescinded the designation of

Anatoly Karachinsky, an individual who had been likewise designated by Defendants for being a board member of Bank Otkritie. Exhibit H—May 19, 2023 Questionnaire.

42.     With its third questionnaire, Defendants continued to pose questions without any apparent relevance to whether Plaintiff remained a board member at Bank Otkritie and merited continued designation under E.O. 14024 as a result. For example, Defendants sought information regarding Plaintiff's place of residence; what steps Plaintiff has taken to physically distance himself from the Russian Federation; and whether Plaintiff has operated in, or has had an ownership interest in, certain sanctioned sectors of the Russian Federation economy. None of the posed questions seek clarifying or corroborating information regarding the submissions made by Plaintiff in support of his delisting request, and none of the posed questions interrogate whether the factual basis for Plaintiff's designation under E.O. 14024 remains intact.

43.     By this point, it is quite apparent that Plaintiff's delisting matter is a charade—one designed solely to delay the inevitable conclusion that Plaintiff has met his burden under the delisting procedures and therefore merits the rescission of his designation pursuant to E.O. 14024. Why Defendants have persisted in treating an individual who acted in accordance with U.S. sanctions compliance expectations and U.S. policy objectives following Bank Otkritie's sanctions designation is entirely unclear. But whatever the reason, it will not suffice as a matter of law. Based on the totality of the information presented to Defendants, it is beyond clear that Plaintiff has not served as a board member at Bank Otkritie since two weeks prior to his designation under E.O. 14024 and that Plaintiff has had no relationship, financial or otherwise, with Bank Otkritie since that time. Any further delay in adjudicating Plaintiff's delisting petition only compounds the egregious unlawfulness of Defendants' action (or lack thereof).

       E.      *Harm to Plaintiff*

44.     Defendants' unlawful action has had devastating effect on Plaintiff personally, financially, and reputationally, severely undermining his ability to maintain his livelihood and that of his family and impeding his ability to gain and maintain employment consistent with his prior experience.

45.     As a direct result of his designation, Plaintiff had to resign from his position as Chief Financial Officer at Pyppl; had immediate restrictions placed on his ability to access funds held in his accounts at non-U.S. financial institutions; and has faced increasing difficulties being able to engage in those basic transactions needed to sustain him and his immediate family. Because he has been unable to access his banking accounts and withdraw his funds therein, Plaintiff has been unable to make payments on outstanding loans and other third-party invoices with all the attendant legal and financial consequences.

46.     In the absence of immediate relief, the harm to Plaintiff will compound over time, perhaps in irreparable ways. Reputationally, Plaintiff faces a long road ahead, as Defendants' unlawful action has made third parties reluctant to engage in even the most basic transactions with him, such as maintaining banking accounts and extending loans. Financially, Plaintiff will be unable to secure sustainable long-term employment so long as he remains subject to sanctions under E.O. 14024 and is identified on the SDN List. Supporting himself and his immediate family will likewise prove increasingly difficult, if not entirely foreclosed, by the continuation of the punishing sanctions. Personally, Plaintiff will continue to feel the stresses of having his name maligned, his professional reputation built up over three decades irrevocably damaged, being unable to secure long-term employment or access the fruits of his past labor, and having persistent difficulties supporting his family's livelihood. Plaintiff suffers this fate for no reason of his own making, but rather because (1) Defendants' fact-finding procedures were not adequate enough to

discern that Plaintiff had resigned his position on Bank Otkritie's board two weeks prior to the

designation action and (2) Defendants have failed to act in a timely manner on Plaintiff's delisting

petition and acted in accordance with law by revoking Plaintiff's designation under E.O. 14024.

## LEGAL CLAIMS

## COUNT I

### DEFENDANTS' FAILURE TO RENDER A DECISION ON PLAINTIFF'S DELISTING PETITION CONSTITUTES UNREASONABLE DELAY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

47.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the

allegations in all preceding paragraphs.

48.     Agencies are required to "conclude a matter presented to it . . . [w]ith due regard

for the convenience and necessity of the parties or their representatives and within a reasonable

time." 5 U.S.C. § 555(b).

49.     Under the APA, reviewing courts are required to compel agency action that is

unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

50.     Despite having incontrovertible evidence in its possession that Plaintiff does not

meet the criteria for designation under E.O. 14024, Defendants have unlawfully withheld a

decision on Plaintiff's delisting request in violation of the APA. During his delisting matter,

Plaintiff provided clear evidence that the factual basis for his designation—i.e., that he serves as a

board member for Bank Otkritie—was in error, as Plaintiff had resigned from this position weeks

prior to his designation by Defendants. Despite having this information in its possession for more

than twelve months, Defendants have not rescinded Plaintiff's designation and removed his name

from OFAC's SDN List.

51.     Despite having incontrovertible evidence in its possession that Plaintiff has met his burden on the delisting procedures set forth at 31 C.F.R. § 501.807, Defendants have unreasonably delayed rendering a decision on Plaintiff's delisting request in violation of the APA. Plaintiff first provided clear evidence that the factual basis for his designation—i.e., that he serves as a board member for Bank Otkritie—was in error in his delisting petition, dated May 5, 2022. For more than a year, Defendants have engaged in dilatory tactics aimed at stalling the inevitable conclusion that Plaintiff does not meet the criteria for designation under E.O. 14024. This failure to render a decision on Plaintiff's delisting petition constitutes unreasonable delay under the APA. Second, Defendants have taken no action to consider the remedial measures proposed by Plaintiff in his delisting petition, and this failure further constitutes unreasonable delay under the APA.

**COUNT II**

**DEFENDANTS' DESIGNATION OF PLAINTIFF PURSUANT TO E.O. 14024 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT**

52.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

53.     Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A) and (D).

54.     By designating Plaintiff for being a board member of Bank Otkritie, Defendants acted arbitrarily and capriciously in violation of the APA, as Plaintiff had resigned from his position as a board member nearly two weeks prior to the designation action. Plaintiff was not a board member of Bank Otkritie at the time of his designation by Defendants.

55.     By treating similarly-situated parties in an unlike manner, Defendants acted arbitrarily and capriciously in violation of the APA, as Defendants have rescinded the designations of other persons erroneously designated pursuant to E.O. 14024, including those who had been likewise designated for purportedly being board members at Bank Otkritie.

## COUNT III

### DEFENDANTS' ADJUDICATION OF PLAINTIFF'S DELISTING PETITION AND ITS AD HOC DEPARTURE FROM LAWFUL PROCEDURE LACKS LEGAL AUTHORITY AND CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION AND AGENCY ACTION IN EXCESS OF STATUTORY AUTHORITY IN VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

56.     Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

57.     The APA empowers reviewing courts to set aside agency action that is, *inter alia*, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law. 5 U.S.C. § 706(2).

58.     The APA defines "agency action" to include, in relevant part, "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 706(1); 5 U.S.C. § 551(13).

59.     By adjudicating Plaintiff's delisting petition, Defendants the State Department, the Office of Sanctions Policy and Implementation, and the latter's director Jim Mullinax are acting arbitrarily and capriciously, without legal authority, and without observance of procedure required by law, as the applicable federal regulations require Defendant the Office of Foreign Assets Control and its Director, Andrea M. Gacki, to adjudicate delisting matters for persons subject to sanctions pursuant to E.O. 14024.

60.     Defendant the Secretary of the Treasury Janet Yellen's redelegation of authority to adjudicate delisting petitions for persons subject to sanctions under E.O. 14024 to Defendants the State Department and its Office of Sanctions Policy and Implementation is in excess of statutory authority and without observance of procedure required by law, as Section 8 of E.O. 14024 only authorizes the Secretary of the Treasury to "redelegate" her authority under E.O. 14024 "within the Department of the Treasury." Any delegation of the functions for which E.O. 14024 provides authorization to the Secretary of the Treasury outside of the United States Department of the Treasury would be contrary to the express authorities and limitations set forth in E.O. 14024.

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court:

A.     Set aside Defendants' actions as unlawful and declare and/or order Defendants' rescission of Plaintiff's designation under E.O. 14024 and the removal of his name from OFAC's SDN List;

B.     Order Defendants to issue a written, reasoned decision on Plaintiff's pending delisting petition and provide justification why his delisting petition is being treated differently than similarly situated petitioners;

C.     Declare Defendants the State Department and its Office of Sanctions Policy and Implementation's adjudication of Plaintiff's delisting petition to be unlawful and order Defendants the Secretary of the Treasury and its Office of Foreign Assets Control to re-assume adjudicatory powers with respect to the delisting matter;

D.     Grant an award to Plaintiff of costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*., and any other applicable provision of law; and

E.      Such other and further relief as the Court may deem proper.


Dated: July 17, 2023


                                          Respectfully submitted,

                                          /s/ Erich C. Ferrari
                                          Erich C. Ferrari, Esq.
                                          Ferrari & Associates, P.C.
                                          1455 Pennsylvania Ave., NW
                                          Suite 400
                                          Washington, D.C. 20004
                                          Telephone: (202) 280-6370
                                          Email: ferrari@falawpc.com
                                          D.C. Bar No. 978253